UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**JAMES ROSS SIPE,**

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

Case No. 6:14-cv-2026-YY

**OPINION AND ORDER**

**YOU, Magistrate Judge:**

    Plaintiff, James Sipe ("Sipe"), seeks to reverse and remand the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 USC §§ 401-433, and Supplemental Security Income ("SSI") under Title XVI of the SSA, 42 USC §§ 1381-1383f. This court has jurisdiction to review the Commissioner's decision pursuant to 42 USC § 405(g) and § 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #7).

For the reasons that follow, the Commissioner's decision is REVERSED and this case is REMANDED for an award of benefits.

## ADMINISTRATIVE HISTORY

Sipe filed applications for DIB and SSI on February 7, 2011, alleging a disability beginning June 15, 2008, due to lacunar infarct (stroke), mild expressive dysphagia, and depression. Tr. 205–12.[1] After the Commissioner denied his applications initially and upon reconsideration (Tr. 136–43, 148–52), Sipe requested a hearing (Tr. 153) which was held on May 7, 2013. Tr. 45–85. On June 12, 2013, Administrative Law Judge ("ALJ") Ted W. Neiswanger issued a decision finding Sipe not disabled. Tr. 16–33. The Appeals Council denied Sipe's subsequent request for review on October 15, 2014. Tr. 1–4. Therefore, the ALJ's decision is the Commissioner's final decision subject to review by this court. 20 CFR §§ 404.981, 422.210.

## BACKGROUND

Born in October 1949, Sipe was 63 years old at the time of the hearing. Tr. 45, 205. He completed a Bachelor of Science degree and served in the Marine Corps and National Guard. Tr. 50–51, 355. Sipe has past work experience as a licensed practical nurse, home attendant, and truck driver. Tr. 51, 76, 355.

## ALJ'S FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR § 404.1520; *Tackett v. Apfel*, 180 F3d 1094, 1098–9 (9th Cir 1999).

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed on June 5, 2015 (docket #14).

Page 2 – OPINION AND ORDER

At step one, the ALJ found that Sipe had not engaged in substantial gainful activity after the alleged onset date of June 15, 2008. Tr. 21. At step two, the ALJ found that Sipe has the following severe impairments: status post lacunar infarct; adjustment disorder; personality disorder with schizoid features; obesity; and hearing loss. *Id.* At step three, the ALJ found that Sipe did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 22.

The ALJ next assessed Sipe's RFC and determined that he could perform medium work except that:

> He can lift and/or carry 50 pounds occasionally and 25 pounds frequently in an eight-hour workday. He can stand and/or walk for six hours and sit for six hours in an eight-hour workday. He can frequently climb stairs, as well as stoop, kneel, crouch, and crawl. He cannot climb ladders, ropes, or scaffolds. He cannot perform work that requires reliably good balancing. He can perform simple routine work tasks. He cannot perform fast paced work, which means work that is externally controlled in terms of the pace and requires the individual to work at a quick pace, make quick judgments, or switch tasks quickly. He cannot perform work that requires good vision at night. He cannot perform work that requires persuasive communication – jobs highly reliant on verbal communication in a persuasive manner.

Tr. 23–24.

At step four, the ALJ found Sipe could not perform any of his past relevant work. Tr. 31. At step five, the ALJ determined that Sipe could perform jobs that exist in significant numbers in the national economy, including industrial sweeper cleaner and linen room attendant. Tr. 31–32. The ALJ therefore concluded Sipe is not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Lewis v. Astrue*, 498 F3d 909, 911 (9th Cir 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028,

Page 3 – OPINION AND ORDER

1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F3d 1194, 1205 (9th Cir 2008), citing *Parra v. Astrue*, 481 F3d 742, 746 (9th Cir 2007); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F3d 1035, 1038 (9th Cir 2008), quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004).

## DISCUSSION

Sipe argues that the ALJ erred by: (1) rejecting the opinion of examining psychologist David Truhn, Psy.D.; (2) rejecting Sipe's testimony; and (3) rejecting the lay witness testimony.

### I.   Opinion of Treating Physician

In February 2013, examining psychologist Dr. Truhn performed a comprehensive psychological examination over the course of two days. Tr. 425–38. Dr. Truhn reviewed Sipe's medical records and administered a battery of five psychometric tests. *Id.* He noted that Sipe spoke at a slow pace at times and occasionally forgot the topic of questioning. *Id.* He also noted that Sipe had great difficulty placing events of his life in chronological order, and responded to questions in a tangential manner, requiring a great deal of redirection. Sipe also exhibited flat affect, and took twice as long as usual to complete the interview despite working methodically and appearing to put forth his best effort. *Id.*

Dr. Truhn wrote that Sipe performed in the average range on tests measuring verbal comprehension and perceptual reasoning, and performed in the borderline range on tests measuring working memory and processing speed. Tr. 430. Sipe's full-scale IQ score was 85,

Page 4 – OPINION AND ORDER

and he scored in the borderline range on a test measuring short-term memory. *Id.* Sipe scored in the low average range on a test measuring mathematical ability and concentration. *Id.* Sipe scored in the extremely low range on a processing-speed test and exhibited significant scatter between subtests and index scores, which "can be indicative of cognitive impairment." *Id.*

Based on his examination and testing, Dr. Truhn concluded that Sipe was severely impaired in his ability to process information accurately. Tr. 431–38. He noted possible over-reporting of psychological dysfunction, but his testing scores otherwise fell within normal limits. Dr. Truhn diagnosed late-onset dysthymic disorder, personality disorder NOS with schizoid features, and ruled out cognitive disorder NOS and undifferentiated somatoform disorder. Tr. 433. He assessed a GAF score of 44 and noted that Sipe's performance on neuropsychological screening subtests indicated severe impairment and "severe cognitive slowing and errors." *Id.* Dr. Truhn completed a medical RFC form, endorsing "marked" limitations in Sipe's ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted; make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 435–38. Finally, Dr. Truhn noted marked limitation in Sipe's ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, and to set realistic goals or make plans independently. Tr. 437–38.

Page 5 – OPINION AND ORDER

The ALJ accorded little weight to Dr. Truhn's opinion, stating that his finding of marked functional limitations exceeded the limitations described in Sipe's testimony and Dr. Truhn's narrative report. Tr. 30.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F3d 1155, 1164 (9th Cir 2008). The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician. *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995). An uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F2d 1391, 1396 (9th Cir 1991). In contrast, if the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F3d at 830. An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss v. Barnhart*, 427 F3d 1211, 1216 (9th Cir 2005).

Here, Dr. Truhn's opinion arguably conflicted with other medical evidence in the record including the opinion of examining psychologist Alison Prescott, Ph.D. Tr. 29–30, 355–58. Dr. Prescott performed a psychological evaluation, but did not endorse any specific functional limitations. Tr. 358. There is a stark contrast in the detail and breadth of the two evaluations. Dr. Prescott performed a general psychological evaluation, administered no objective testing, and prepared a brief report. Tr. 355–58. In contrast, Dr. Truhn saw Sipe over the course of two days, administered a wide range of psychometric testing, and prepared a detailed 14-page report. Tr. 425–38. Nevertheless, because Dr. Truhn's opinion endorses significantly more limitations

than does the report by Dr. Prescott, this court reviews the record to determine whether the ALJ provided specific, legitimate reasons for discrediting Dr. Truhn's opinion.

As a first reason for discounting Dr. Truhn's conclusions, the ALJ found that Dr. Truhn's conclusions were not consistent with his own narrative report. Tr. 30. An ALJ may discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss*, 427 F3d at 1216. Further, the ALJ need not accept an opinion of a physician when it is unsupported by clinical findings. *Matney v. Sullivan*, 981 F2d 1016, 1019 (9th Cir 1992). The ALJ discounts Dr. Truhn's conclusions that Sipe experiences multiple "marked" limitations stemming from a cognitive impairment. While some of Sipe's intellectual testing scores were "average," those relating to cognition indicated "borderline" or "severely impaired" performance. Tr. 430–31. This is fully consistent with Dr. Truhn's detailed narrative and conclusions as to Sipe's limitations. Accordingly, the ALJ's one sentence rejection, unsupported by any further explanation, does not withstand scrutiny.

Next, the ALJ found Dr. Truhn's opinion was contradicted by the medical record as a whole. Tr. 30; *see* 20 CFR §§ 404.1527(c)(4), 416.927(c)(4) (ALJ may consider the consistency of an opinion with the record as a whole). As support for that conclusion, the ALJ cites a medical record dated four days after Sipe's stroke (Ex. 2F/21, Tr. 328), a page from Dr. Prescott's report (Ex. 5F/3, Tr. 357), and a page from Dr. Truhn's report itself (Ex. 11F/7, Tr. 430). However, the ALJ does not specify what information in those exhibits contradicts Dr. Truhn's conclusions regarding Sipe's limitations, and this reason therefore does not constitute specific evidence sufficient to reject Dr. Truhn's conclusions.

Finally, the ALJ found that Dr. Truhn's opinion conflicted with Sipe's activities of daily living. The ALJ may reject an opinion that is inconsistent with the claimant's level of activity.

Page 7 – OPINION AND ORDER

*Rollins v. Massanari*, 261 F3d 853, 856 (9th Cir 2001). The ALJ noted that Sipe goes shopping, interacts appropriately with others, attends a diabetes nutrition group, is able to "drive and go outside on his own," and looked for employment for some period of time after his stroke. Tr. 30, 356. The difficulty is that these observations fail to account for the limited nature of Sipe's activities, as revealed in the remainder of the record. Sipe goes shopping for less than one hour per week. Tr. 245. He lives with his brother, who routinely and repeatedly reminds Sipe of the need to perform activities as basic as changing and laundering his underwear, shaving, and getting a haircut. Tr. 244. Sipe needs repeat daily reminders to do the minimal household chores he does. *Id.* Disability claimants "should not be penalized for attempting to lead normal lives in the face of their limitations." *Garrison v. Colvin*, 759 F3d 995, 1016 (9th Cir 2014), quoting *Reddick*, 157 F3d at 722. The record as a whole reveals that Sipe performs only minimal activities and that those activities he does perform are significantly bolstered by the active involvement of his brother. Accordingly, the ALJ's general observation that Sipe engages in some level of activity, viewed in the context of the remainder of the record, is an insufficient basis on which to reject the conclusions reached by Dr. Truhn.

In sum, the ALJ failed to provide specific, legitimate reasons to reject Dr. Truhn's conclusions concerning Sipe's limitations.

## II.   Sipe's Testimony

At the hearing, Sipe testified that his primary difficulty after his strokes was difficulty communicating. Tr. 57. He has diminished ability to focus on a particular idea, and feels fatigued during the day and usually takes a nap for four hours every afternoon. Tr. 66. Sipe stated that he has difficulty concentrating, is easily distracted, and lacks energy. Tr. 68.

The ALJ found Sipe's testimony was "generally consistent" with his treatment record, but rejected his testimony as to the severity of his limitations. Tr. 24, 28. Sipe challenges this finding.

The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F3d 586, 591 (9th Cir 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F3d at 1036. Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id*, quoting *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996). The ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *Batson*, 359 F3d at 1197.

Given the lack of any evidence of malingering, the ALJ was required to give clear and convincing reasons to reject Sipe's testimony. The ALJ's decision contains a number of reasons why Sipe's alleged symptoms are not supported by the record.

The ALJ states that Sipe exhibited greater functioning than he alleged. Tr. 28. Activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins*, 261 F3d at 857. The ALJ again focuses on physical activities and Sipe's intellectual capacity that is, reportedly, "average." Tr. 28. However, Sipe's ability to walk a half mile, go shopping, perform simple household chores, watch television, and read for pleasure misses the mark. Those activities are not inconsistent with the primary limitations identified by Dr. Truhn, namely an

Page 9 – OPINION AND ORDER

...

extremely low processing speed and working memory. Tr. 430. Similarly, they do not provide a basis to reject Sipe's testimony about his limitations when viewed in the context of the record as a whole.

The ALJ also found that objective clinical findings in the record did not support Sipe's alleged limitations. Tr. 28. Minimal objective findings can further undermine a claimant's credibility when other reasons are present. *Burch v. Barnhart*, 400 F3d 676, 680-81 (9th Cir 2005). However, as explained above, the detailed psychometric testing performed by Dr. Truhn supports and explains the limitations Sipe describes. For the same reason, it wholly undercuts the ALJ's conclusion concerning the effect of objective clinical findings on Sipe's testimony.

Finally, the ALJ relied on evidence that Sipe consistently sought employment during the relevant period. Tr. 29. In assessing a claimant's credibility, the ALJ is entitled to use "ordinary techniques of credibility evaluation, such as claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Tonapeytan v. Halter*, 242 F3d 1144, 1148 (9th Cir 2001). A successful period of work, coupled with continuing efforts to find employment, may provide a basis to discount a claimant's allegations of total disability. *Bray v. Comm'r*, 554 F3d 1219, 1227 (9th Cir 2009). However, Sipe has not worked since the alleged onset date. Given Sipe's continuous work history prior to the onset date, his act of applying for jobs following his stroke do not strike this court as undermining his allegations of disability in light of the information in Dr. Truhn's report. Accordingly, this reason is an insufficient basis upon which to reject Sipe's testimony.

### III. Lay Witness Testimony

Sipe next argues that the ALJ improperly rejected the lay testimony of his brother, John Sipe ("Mr. Sipe"). Mr. Sipe completed a third party function report on May 10, 2011. Tr. 242–

49. He wrote that Sipe needed reminders to perform basic hygiene and chores. Tr. 243–44. While Sipe can perform tasks like vacuuming and washing dishes, he needs repeat reminders, and occasionally needs reminders to refill his medications. *Id.* Mr. Sipe also wrote that Sipe poorly executed spoken instructions, and had difficulty with memory, completing tasks, concentrating, understanding and following directions and written instructions, problem-solving, planning, multi-tasking, and handling stress. Tr. 246-48.

The ALJ must provide "germane reasons" for rejecting the testimony of lay witnesses, and need not "clearly link his determination to those reasons." *Lewis*, 236 F3d at 511–12; *see also Molina v. Astrue*, 674 F3d 1104, 1114 (9th Cir 2012). Here, the ALJ found Mr. Sipe to be generally credible and contended that Mr. Sipe's testimony was accounted for in the RFC. This court agrees with Sipe that the ALJ gave no reason to reject Mr. Sipe's testimony. Instead, the issue is whether the limitations described by Mr. Sipe are adequately reflected in the RFC, which is discussed below.

## IV.   Remand for an Award of Benefits

As discussed above, the ALJ erred by rejecting the conclusions of Dr. Truhn and the testimony of Sipe and his brother. Both Sipe's testimony and that of his brother reflect limitations fully consistent with the detailed objective testing and conclusions of Dr. Truhn. Because the ALJ provided no sufficient basis to reject them, Dr. Truhn's conclusions must be credited "as a matter of law." *Edlund*, 253 F3d at 1160, quoting *Lester*, 81 F3d at 834.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir 2000), *cert. denied*, 531 US 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by

further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F3d 1135, 1138–39 (9th Cir 2011). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F3d 871, 876 (9th Cir 2003), citing *Bunnell v. Sullivan*, 947 F2d 341, 348 (9th Cir 1991). The reviewing court declines to credit testimony when outstanding issues remain. *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

As discussed above, the ALJ erred by rejecting the testimony of Sipe, his brother, and Dr. Truhn. This court concludes that no outstanding issues must be resolved and that the ALJ would be required to find Sipe disabled were that testimony credited. Dr. Truhn opined that Sipe has a host of "marked" limitations which, by definition "preclude the ability to perform the designated activity on a regular and sustained basis, *i.e.* 8 hours a day, 5 days a week, or an equivalent schedule." Tr. 435–38. It is clear that those marked limitations were not accounted for in the RFC, despite the inclusion of some restrictions by the ALJ, including a restriction to no "fast paced work," no "persuasive communication," and performance of only simple, routine tasks. *See* Tr. 23–24. According to the VE, competitive employment is precluded for a person who has

an "ongoing" difficulty sustaining attention and concentration even for simple, routine tasks such that their productivity dropped by even 10% below that of their coworkers. Tr. 83. The objective testing by Dr. Truhn, the testimony by Sipe and his brother, as well as other evidence in the record, including chart notations by other examining physicians, indicates that Sipe's marked limitations in sustained concentration and persistence preclude competitive employment. Though not critical to the conclusion, this court also notes that unrebutted testimony concerning Sipe's fatigue and excessive daytime sleeping would also be inconsistent with competitive employment. *See, e.g.*, Tr. 66, 243, 248. For this reason, the proper remedy is an award of benefits.

## ORDER

For the reasons discussed above, the Commissioner's decision is REVERSED, and this case is REMANDED for an award of benefits, under sentence four of 42 USC § 405(g).

DATED this ___8th___ day of June, 2016.

                                                               Youlee Yim You
                                                               United States Magistrate Judge